UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. **00-6217** CR-HURLEY

18 USC 371
18 USC 2314
18 USC 2

MAGISTRATE JUDGE
VITUNAC

FILED by _____ D.C.

AUG 1 0 2000

CLERK U.S. DIST. CT.
S.D. OF FLA. FT. LAUD.

UNITED STATES OF AMERICA,    :

        Plaintiff,    :

v.    :

JUDE THADDEUS OGUEGBE,    :
   a/k/a "Ben",

        Defendant.    :

_____

<u>INDICTMENT</u>

The Grand Jury Charges:

<u>General Allegations</u>

At all times material to this Indictment:

1.    Brent Equities Inc. was located at Suite 200, 410 East Hallandale Beach Blvd., Hallandale, Florida.

2.    Brent Equities Trust Bank and Brent Equities & Investment Bank were located at Suite 200, 410 East Hallandale Beach Blvd., Hallandale, Florida.

3.    Brent Equities Inc. had telephone number 305-454-3098 and telephone facsimile number 305-458-2136 located at Suite 200, 410 East Hallandale Beach Blvd., Hallandale, Florida.



## COUNT ONE

1.    The general allegations section of this Indictment is realleged and expressly incorporated herein by reference.

2.    Beginning in or about May, 1994 and continuing thereafter to on or about February 8, 1996, in Hallandale, Broward County, Florida, in the Southern District of Florida and elsewhere, the defendant,

JUDE THADDEUS OGUEGBE,
a/k/a "Ben",

did knowingly, unlawfully and willfully, conspire, confederate, and agree with other persons known and unknown to the grand jury to commit offenses against the United States, that is wire fraud, in violation of Title 18, United States Code, Section 1343 and the transportation of property stolen, converted, and taken by fraud in interstate and foreign commerce of the value of $5,000 or more, in violation of Title 18, United States Code, Section 2314.

### Object of the Conspiracy

3. It was the purpose and object of this conspiracy to defraud people and to obtain money by means of false and fraudulent pretenses, representations,and promises, by the use of wire transmissions in interstate and foreign commerce to wit: telephone calls and telephone facsimiles (faxes).

4.   It was a part of the conspiracy that Erwin Berman used Brent Equities, Inc. and created entities known as Brent Equities Trust Bank and Brent Equities & Investment Bank.

5.   It was further part of the conspiracy that Erwin Berman claimed to be President of Brent Equities Trust Bank and Brent Equities & Investment Bank.

6.   It was further a part of the conspiracy that defendant JUDE THADDEUS OGUEGBE, a/k/a "Ben", pretended to be an official of banks, agencies and or departments of the Nigerian government.

7. It was a further part of the conspiracy that defendant JUDE THADDEUS OGUEGBE, a/k/a "Ben", posing as a Nigerian official, created an advance fee scheme and would send false fax letters and use false documents using the letterhead of the Central Bank of Nigeria and fax them to the victims, referred to as "clients," usually businessmen and professionals all over the world, offering the "client" an opportunity to make money by helping in the transfer of a large amount of money out of Nigeria into the "clients'" bank account.

8. For their help, the "clients" were promised a return of 30% to 40% of the funds to be transferred into their bank account which was usually promised to be several million dollars.

9. Once the "clients" responded to the faxes, the "clients" received additional faxes keeping the "clients" up to date on the progress being made in having the money transferred to the "clients'" bank account.

10. During this time the defendant, JUDE THADDEUS OGUEGBE, a/k/a "Ben", sent additional faxes and made telephone calls to the "clients" advising them that they needed to pay certain "fees" in Nigeria in order to get the funds released. The faxes explained to the "clients" these "fees" were for taxes, payoffs, legal assistance, and other expenses. The "clients" would receive instructions to wire their funds to certain bank accounts  in London, England, and elsewhere.

11. It was a further part of the conspiracy during the ongoing fax correspondence with the "clients" that the defendant JUDE THADDEUS OGUEGBE, a/k/a "Ben", contacted Erwin Berman in Hallandale, Florida and advised him of the status and identity of the "clients."

12.  The defendant JUDE THADDEUS OGUEGBE, a/k/a "Ben",advised Erwin Berman to fax the "client" a letter presenting himself as an American banker seeking additional funds from the "clients" for various "fees."

13. It was a part of the conspiracy that the defendant, JUDE THADDEUS OGUEGBE, a/k/a "Ben", then caused Erwin Berman to send out faxes on Brent Equities & Investment Bank or Brent Equities Trust Bank letterheads advising the "clients" that this bank was acting on behalf of the Nigerian Government and that the intended funds were scheduled for funding through the Central Bank of Nigeria, but additional fees were now due and should be wire transferred to Brent Equities' bank account in Hallandale, Florida.

4

14. It was a further part of the conspiracy that the defendant JUDE THADDEUS OGUEGBE, a/k/a "Ben" caused Erwin Berman to advise the "clients" of the bank wire-transfer numbers and bank account numbers to which to send their funds. Upon receipt of the funds from the "clients," Erwin Berman caused his bank to send a percentage of the money he received from the "clients" by wire transfer to a bank account in London, England or elsewhere based on instructions from the defendant JUDE THADDEUS OGUEGBE, a/k/a "Ben."

15. It was further part of the conspiracy that the defendant JUDE THADDEUS OGUEGBE, a/k/a "Ben" and Erwin Berman utilized telephone number 305-454-3098 and telephone facsimile machine number 305-458-2136 at Suite 200, 410 East Hallandale Beach Blvd, Hallandale, Florida.

## OVERT ACTS

16. In furtherance of this conspiracy and to effect the objects thereof, there were committed by at least one of the conspirators in the Southern District of Florida, and elsewhere, at least one of the following overt acts among others:

A. On or about June 12, 1995, in the Southern District of Florida, the defendant JUDE THADDEUS OGUEGBE, a/k/a "Ben" caused a letter to be faxed to Daniel Arbona,in Marseilles, France, notifying him that his claim for $75,500,000 had been scheduled for funding and that the Legal department requested payment of 1% for the NER Fund

5

tax of $188,750 that was now payable and should be wire transferred to Brent Equities, Inc.'s bank account.

B. On or about June 27, 1995, in the Southern District of Florida, Erwin Berman's bank account at NationsBank received a wire transfer of funds from Daniel Arbona through Bank Credit Lyon in the amount of $94,360.00.

C. On or about August 25, 1995, in the Southern District of Florida, the defendant JUDE THADDEUS OGUEGBE, a/k/a "Ben", caused a fax to be sent to Daniel Arbona in France.

D. On or about January 19, 1996, the defendant JUDE THADDEUS OGUEGBE, a/k/a "Ben" caused a fax to be sent to Daniel Arbona in France.

All in violation of Title 18, United States Code, Section 371.

<u>COUNT TWO</u>

1. The general allegations section of this Indictment is realleged and expressly incorporated herein by reference.

2.    On or about June 27, 1995, in the Southern District of Florida, the defendant,

JUDE THADDEUS OGUEGBE, a/k/a "Ben",

did unlawfully cause to be transported, transmitted, and transferred in interstate and foreign commerce from France to the State of Florida money of the value of $5,000 or more, that is , approximately

6

$94,360, knowing the same to have been stolen, converted, and taken by fraud.

All in violation of Title 18, United States Code, Sections 2314 and 2.

A TRUE BILL

_____
Foreperson

_____
GUY A. LEWIS
UNITED STATES ATTORNEY

_____
JEFFREY H. KAY
ASSISTANT U.S. ATTORNEY

7

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

UNITED STATES OF AMERICA

v.

JUDE THADDEUS OGUEGBE
_____

CASE NO. _____

**CERTIFICATE OF TRIAL ATTORNEY***

**Superseding Case Information**:

New Defendant(s)    Yes ____    No _X_
Number of New Defendants    ____
Total number of counts    ____

**Court Division**: (Select One)

____ Miami    ____ Key West
_X_ FTL    ____ WPB ____ FTP

I do hereby certify that:

1.    I have carefully considered the allegations of the indictment, the number of defendants, the number of probable witnesses and the legal complexities of the Indictment/Information attached hereto.

2.    I am aware that the information supplied on this statement will be relied upon by the Judges of this Court in setting their calendars and scheduling criminal trials under the mandate of the Speedy Trial Act, Title 28 U.S.C. Section 3161.

3.    Interpreter:    (Yes or No) YES_____
      List language and/or dialect Nigerian; deft does speak English_____

4.    This case will take __2-3__ days for the parties to try.

5.    Please check appropriate category and type of offense listed below:
      (Check only one)                              (Check only one)

| I | 0 to 5 days | _X_ | Petty | _____ |
|---|---|---|---|---|
| II | 6 to 10 days | _____ | Minor | _____ |
| III | 11 to 20 days | _____ | Misdem. | _____ |
| IV | 21 to 60 days | _____ | Felony | _X_ |
| V | 61 days and over | _____ | | |

6.    Has this case been previously filed in this District Court? (Yes or No) NO
If yes:
Judge: _____    Case No. _____
(Attach copy of dispositive order)

Has a complaint been filed in this matter? (Yes or No) ____YES_____
If yes:
Magistrate Case No. __96-5061-VITUNAC_____
Related Miscellaneous numbers: _____
Defendant(s) in federal custody as of _____
Defendant(s) in state custody as of _____
Rule 20 from the _____    District of _____

Is this a potential death penalty case? (Yes or No)____NO_____

7.    Does this case originate from a matter pending in the U. S. Attorney's Office prior to April 1, 1999? ___ Yes _X_ No    If yes, was it pending in the Central Region? ___ Yes ___ No

8.    Did this case originate in the Narcotics Section, Miami? ___ Yes _X_ No

_____
JEFFREY H. KAY
ASSISTANT UNITED STATES ATTORNEY
FLA. Bar No. 208035

*Penalty Sheet(s) attached

REV.6/27/00

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA
### PENALTY SHEET

Defendant's Name: <u>JUDE THADDEUS OGUEGBE</u>    No.:_____

Counts #I:    Conspiracy        (Title 18, United States Code, Section 371)

*Max Penalty: 5 years' imprisonment;  $250,000 fine_____

Count #2:    Interstate Transportation of Stolen Property
            (Title 18, United States Code, Section 2314

*Max Penalty: ___ 10 years' imprisonment; $250,000 fine_____

**\*Refers only to possible term of incarceration, does not include possible fines, restitution, special assessments, parole terms or forfeitures that may be applicable.**

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

IN THE MATTER OF A COMPLAINT                CASE NO. 96-5061-AEV
AND ARREST WARRANT                                    96-5062-AEV
_____/

### ORDER UNSEALING COMPLAINT AND ARREST WARRANT

This cause comes before the Court on the government's Motion
to Seal.  Considering the grounds raised in the Motion, and the
Court being otherwise advised in the premises, it is

ORDERED AND ADJUDGED that the Motion is granted.  The Clerk of
the Court is directed to unseal the complaint and arrest warrant in
files 96-5061-AEV and 96-5062-AEV.

DONE AND ORDERED in Chambers at West Palm Beach, Florida this
13 day of October, 1996.

ANN E. VITUNAC
UNITED STATES MAGISTRATE JUDGE

cc: AUSA JEFFREY H. KAY

RBC.klp

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

IN THE MATTER OF A                    CASE NO. 96-5061-AEV
COMPLAINT AND ARREST WARRANT                  96-5062-AEV
_____/

<u>MOTION UNSEALING COMPLAINT AND ARREST WARRANT</u> 

    COMES NOW the United States of America, by and through the
undersigned Assigned United States Attorney, and respectfully moves
the Court to unseal all documents that were previously sealed, that
is, the complaint and arrest warrant in the above referenced case.

                Respectfully submitted,

                KENDALL COFFEY
                UNITED STATES ATTORNEY

BY: _____
                JEFFREY H. KAY
                ASSISTANT UNITED STATES ATTORNEY
                FEDERAL COURTHOUSE
                299 EAST BROWARD BOULEVARD
                FORT LAUDERDALE, FLORIDA  33301
                FLORIDA BAR NO. 208035
                TELEPHONE:  (305) 356-7392

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF FLORIDA

UNITED STATES OF AMERICA,            CASE NO.:    96-5061-AEV

_____Plaintiff,_____

_____VS.
"BEN"_____

_____Defendant._____

## TRANSMITTAL LETTER FOR
## **SEALED DOCUMENT**

Plaintiff or Defendant
(circle one only)

Filed Date:___7/26/96_____

Number of Documents Enclosed:__2_____

_____

RECEIPT FOR SEALED DOCUMENT

DATE:_____

Original Document(s) received by:_____
(Docketing Supervisor/Workleader)

Copy for Judge received by:_____
(Chamber's Staff)

_____

## **SEALED DOCUMENT IN VAULT**

**DOCUMENT TO BE UNSEALED BY ORDER OF COURT UPON GOOD CAUSE SHOWN**

_____

DOCKET CLERK:_____

DOCKET NUMBER(S):____7 9 8_____

_____

RECORDS CLERK:_____

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF FLORIDA

CASE NO.: 96 - 6067 - AFL

_____

_____

v.

_____

_____

## TRANSMITTAL LETTER FOR
## SEALED DOCUMENT

### Plaintiff or Defendant
(circle one only)

Filed date: 12/2/96

Number of Documents enclosed: 1

---

### RECEIPT FOR SEALED DOCUMENT

DATE: _____

Original Document(s) received by:_____
(Docketing Supervisor/Workleader)

Copy for Judge received by:_____
(Chamber's Staff)

---

## SEALED DOCUMENT IN VAULT
DOCUMENT TO BE UNSEALED BY ORDER OF COURT UPON GOOD CAUSE SHOWN.

---

DOCKET CLERK: _____

DOCKET NUMBER(S): 5, 6

_____

AO 442 (Rev. 12/85) Warrant for Arrest

# United States District Court

__SOUTHERN_____ DISTRICT OF _____ __FLORIDA__

UNITED STATES OF AMERICA

V.

BEN, a/k/a
Andrew Giwa, a/k/a
Jude T. Oguegbe, a/k/a
Benjamin Igwe

## WARRANT FOR ARREST

CASE NUMBER:

96-5061 AR

TO:    The United States Marshal
and any Authorized United States Officer

YOU ARE HEREBY COMMANDED to arrest __"BEN" aka Andrew Giwa, aka Jude T. Oguegbe, aka Benjamin Igwe__

_____
                                                                      Name

and bring him forthwith to the nearest magistrate to answer a(n)

[ ] Indictment  [ ] Information  [X] Complaint  [ ] Order of court  [ ] Violation Notice  [ ] Probation Violation Petition

charging him with (brief description of offense) knowingly and willfully commit conspiracy, wire fraud, transportation of stolen property in interstate and foreign commerce and money laundering;

in violation of Title __18__ United States Code, Section(s) __371, 1343, 2314 and 1956_____

__ANN VITUNAC_____        __UNITED STATES MAGISTRATE JUDGE__
Name of Issuing Officer                                      Title of Issuing Officer

_____        __West Palm Beach, Florida_____
Signature of Issuing Officer                                 Date and Location

Bail fixed at $ _none-detain_____ by _____
                                                            Name of Judicial Officer

| RETURN |
|---|
| This warrant was received and executed with the arrest of the above named defendant at _____ _____ |

| DATE RECEIVED | NAME AND TITLE OF ARRESTING OFFICER | SIGNATURE OF ARRESTING OFFICER |
|---|---|---|
| DATE OF ARREST | | |

)LLOWING IS FURNISHED FOR INFORMATION ONLY:

_____

_____

_____

_____

_____

_____

_____

lBER: _____

_____ WEIGHT: _____

_____ RACE: _____

_____ EYES: _____

)OS, OTHER DISTINGUISHING MARKS: _____

_____

_____

\MBER: _____

iPLETE DESCRIPTION OF AUTO: _____

_____

INVESTIGATIVE AGENCY AND ADDRESS: _____

_____

_____

# United States District Court

| | | |
|---|---|---|
| SOUTHERN | DISTRICT OF | FLORIDA |

UNITED STATES OF AMERICA

V.

"BEN" a/k/a
Andrew Giwa, a/k/a
Jude T. Oguegbe a/k/a
Benjamin Igwe

**CRIMINAL COMPLAINT**

CASE NUMBER:

I, the undersigned complainant being duly sworn state the following is true and correct to the best of my

knowledge and belief.  On or about <u>2/23/95</u> in <u>Broward</u> County, in the

<u>Southern</u> District of <u>Florida</u> defendants did, (Track Statutory Language of Offense)

knowingly and willfully commit conspiracy, wire fraud, transportation of stolen property in interstate and foreign
commerce and money laundering;

in violation of Title <u>18</u> United States Code, Section <u>371, 1343, 2314 and 1956</u>

I further state that I am a <u>S/A U.S. Secret Service</u> and that this complaint is based on the following facts:
Official Title

Please see attached affidavit.

Continued on the attached and made a part hereof:   [x] Yes  [ ] No

WILLIAM A. LOWE

Signature of Complainant

Sworn to before me, and subscribed in my presence,

<u>March 22, 1996</u>          at   <u>WPB Fla</u>
Date                                       City and State

UNITED STATES MAGISTRATE JUDGE
Name and Title of Judicial Officer                Signature of Judicial Officer

)                    )

# AFFIDAVIT IN SUPPORT OF
## APPLICATION FOR ARREST WARRANT

I, William A. Lowe, being duly sworn, depose and state:

1.  I am a Special Agent with the United States Secret Service and have been so
employed since May 10, 1976. I have participated in investigations involving credit card
fraud, bank fraud, counterfeiting, mail and wire fraud, while assigned to the Miami Field
Office, for the last seven and a half years. I am presently assigned as the Group Leader of
the South Florida-West African Task Force investigating credit card fraud, bank fraud,
mail and wire fraud cases and other fraud schemes involving Nigerian Nationals in and out
of the United States.

2.  I am an investigative or law enforcement officer of the United States, in that I am
empowered by law to conduct investigations and to make arrests for felony offenses,
under authority of Title 18, U.S. Codes, Section 3056.

3.  I have participated in the investigation of the above offenses. The information in this
affidavit is based on personal knowledge and conversations with other law enforcement
personnel, bank officials and victims.

4.  On 2/23/95 information was received from the Newark Field Office which indicate that
a South Florida company, Brent Equities Trust Bank might be involved in a Advance Fee
Fraud Scheme and that money from the fraud was being sent to a SunBank account.

5.  This scheme is related to the receipt of a letter or fax from an individual claiming to be
employed by a Government agency of the Federal Government of Nigeria. The individual
writing the letter claims that he is responsible for the issuance of contracts for his agency,
and as a result of one of these contracts he has over invoiced a larger government
contract, resulting in a overage, which generally ranges from $15 - $45 million. This
person is looking for someone (therefore the purpose of the letter), to handle the transfer
of the over invoiced funds into their bank account. For doing this the Nigerian
government employee agrees to share the over invoiced funds, normally on a split of 30%

to the account holder, 60% to the Nigerian employee and 10% for expenses. If the account holder is interested he/she is usually asked to provide a copy of their company stationary, a copy of their pro forma invoice and their bank name and account number. If the person contacted, complies with these request, they are usually faxed copies of official looking Nigerian Government documents which indicate that they have been awarded a contract worth millions of dollars (the money which has been over invoiced). Sometimes they are even faxed a copy of an official looking check, for millions of dollars, from the Central Bank of Nigeria, bearing their name as payee

6. Once the victim has responded to the faxed instructions they are asked to pay certain governmental fees, ranging from $10,000 to $1 million. Normally they are asked for 1% of the value of the contract (ie. $25 million contract they would ask for fees of $250,000). These fees are for multitude reasons, which end only when the victim has run out of money, or finally refuses to pay more. The end result in all cases, is that money promised, is never received and the victim is left poorer as a result of paying endless advance fees, hence the name "Advance Fee Fraud".

7. Initial investigation of Brent Trust Bank revealed that the company's true name was Brent Equities, Inc. Information obtained indicated that Brent Equities, which was owned and operated by Erwin L. Berman is possibly a "clearing house/bank", a term given to a business or individual which acts as a intermediary or middleman, between the Nigerian scam artists and the victim . A clearing house/bank often acts as a funnel for the funds sent from the victim to the Nigerians. Thus, not only do they lend legitimacy to the scam, they also launder the funds which are being scamed.

8. In the course of this investigation, on 2/27/95 I ran a corporate records check of Brent Equities. State of Florida Corporate Records show that Brent Equities, Inc. is an active corporation located at 410 E Hallandale Beach, Blvd, Suite 210, Hallandale, Fl. 33009, telephone # (305) 454-3098. The original filing date for the corporation was 2/18/91 and it has Federal ID # 650244621. Erwin L. Berman, DOB 5/1/32 is listed as both the Registered Agent and the only Officer of the corporation.

2

phone numbers are the same phone numbers listed on the referral from the Newark Secret Service.

13. While on temporary duty in Lagos, Nigeria, during April 1995, I took copies of the aforementioned "official looking documents" and had them examined by U.S. Embassy personal who were familiar with Nigerian government documents. All of the documents were determined to be fraudulent and in fact most were completely bogus. I also showed the documents to the Commissioner of Police for INTERPOL -NIGERIA and the Chief Bank Examiner for the Central Bank of Nigeria, both of whom stated that the documents were false and bogus.

14. On 5/12/95 Inv. Jim Johnson provided me with copies of Brent Equities bank records which he had subpoenaed from Home Savings Bank, minus the checks which had not been received as yet. A review of the records, which included the Brent Equities account signature card, showed that both Erwin Berman and his wife, Marilyn Berman were required to sign all checks issued. Copies of Brent Equities bank statements, from Oct. 1994 to March 1995 showed that in Oct. there was a account balance of $26.69. Bank records further indicated that between November 1994 and October 1995 that $577,952.00 had passed through Brent Equities Home Savings bank account. In addition, of that amount, $150,000.00 had been wired transferred from the same account, to accounts in Nigeria or in Nigerian's names.

15. On 12/14/95 Investigator Johnson faxed a letter to Far East Money Exchange, LTD, Kowloon, Hong Kong regarding a transfer of funds in the amount of $ 284, 984.00 from JJS Bangkok Development and Manpower to Brent Equities account at Home Savings Bank (Acc.# 6189-189-013129) on 6/29/95. Assistance was requested in identifying and contacting the principles of JJS Bangkok.

16. On 12/15/95 Investigator Johnson and I received a faxed response from Mr. Suvicharn Yangyuenwong, Managing Director of JJS Bangkok Development and Manpower, indicating that he had been in touch with Mr. Berman at Brent Equities. He

provided contact phone numbers as well as faxed copies of correspondence that he had received from Brent Equities, including a copy of a wire transfer document which showed that he had wire transferred $ 285,000 to Brent Equities on 6/29/95.

17. In furtherance of this investigation Mr. Suvicharn flew to Ft. Lauderdale where he met with Investigator Johnson and I on January 19, 1996. Mr. Suvicharn provided us with additional information and documents showing that he had in fact lost $ 1.6 million in this scam, as follows:

17A. May 19, 1995 Mr. Suvicharn received a unsolicited faxed letter from a Dr. Oganiru Sunday who represented the Nigerian Federal Ministry of Works. The letter explains that Dr. Sunday has access to $ 28,500,000 in over invoiced funds belonging to the Federal Ministry of Works and that he was looking for a foreign business partner willing to accept a deposit of this money into his account. The letter explains, for receiving this money in his account, Mr. Suvicharn will receive a 30 % share of the $ 28,500,000 ($ 8,550,000).

17B. Mr. Suvicharn accepts these conditions and after several phone calls and faxes to Dr. Sunday, who is in Lagos, Nigeria, on May 29,1995 he wire transfers $ 21,218.00 as a down payment to an account given him by Dr. Sunday. First Fidelity Bank - London, for credit to Devon Merchant Bank, Attn. Steve Ahans.

17C. Subsequently in conversations with Dr. Sunday, Mr. Suvicharn is told that he has to pay additional up front fees, before the $ 28.5 million can be transferred to him, so he makes the following requested wire transfers:

| Date | Amount | Payee |
|------|--------|-------|
| 6/14/95 | $ 80,000.00 | First Fidelity Bank - London credit to Devcon Merchant Bank Ltd. Attn: Steve Ahans |

| | | |
|---|---|---|
| 6/16/95 | $ 45,000.00 | First Fidelity Bank - London credit to Devcon Merchant Bank Ltd. Attn: Steve Ahans |
| 6/22/95 | $ 65,300.00 | First Fidelity Bank - London credit to Devcon Merchant Bank Ltd. Attn: Steve Ahans |

17D.  Mr. Suvicharn stated that he first heard of Brent Equities, when he received a unsolicited faxed document, dated June 27, 1995. This was a letter from Erwin L. Berman, President of Brent Equities Trust Bank, 410 E. Hallandale Beach Blvd, Hallandale, Florida to the "The President", JJS Bangkok Development and Manpower. This letter notified him that his claim for $ 28,500,000 had been approved and that payment had been scheduled through the Central Bank of Nigeria. Berman advised, however, that first JJS Bangkok must pay a 1% Educational Development Levy of $ 285,000 to the Federal Government of Nigeria before his draft of $ 28.5 million was forwarded. The letter further advised that the money should be wire transferred to Home Savings Bank (acct. 6189-189-013129) for credit to Brent Equities, Inc. (acct. 0300-120715) and as soon as the wire transfer was received, payment to him would be expedited.

17E.  Mr. Suvicharn stated, that based on this faxed letter, conversations with Dr. Sunday and conversations with Erwin Berman (verified by phone records) that on June 29, 1995 he wired transferred $ 285,000.00 to Brent Equities account at Home Savings Bank account # 0300-120715 (The difference in the amount sent, $285,000.00 and the amount received, $ 284,984.00, is the $ 16.00 wire transfer fee.)

17F.  On July 5, 1995 Mr. Suvicharn received a second fax , dated July 5, 1995 from Erwin L. Berman, Brent Equities Trust Bank , Foreign Operations Office to Mr. Survicharn, asking him to respond to the second page of the fax, so that his funds could be released. The second page, dated July 4, 1995, appears to be an

official letter from Dr. Andrew Giwa, Chief Legal Adviser, Central, Bank of
Nigeria. This letter advises that JJS Bangkok's original contract agreement with
the Federal Government of Nigeria is not in the file and that JJS Bangkok must
provided a copy within 48 hours to receive their payment.

17G.  On July 7, 1995 Mr. Suvicharn received a third fax, dated July 7, 1995, from
Erwin Berman, Brent Equities Trust bank, Foreign Operations Office, to Mr.
Survicharn referencing his letter of July 5th and asking him to comply with the
request for the missing contract agreement and completion certificate.  The second
page, dated July 7, 1995, appears to be an official letter from Dr. Andrew Giwa,
Legal Department, Central Bank of Nigeria. This letter references Giwa's letter
of July 4th and also a telephone conversation between Giwa and Mr. Survicharn
on July 6th regarding the missing contract agreements.  Due to the missing
agreements, Dr. Giwa demanded that an additional $ 500,000, a refundable
security deposit, be wire transferred to the First Fidelity Bank Processing Center,
570 Broad St, Newark, N.J. for credit to the Internal Revenue Department, acct.
18184.  Mr. Suvicharn had no further telephone conversations or faxes from Brent
Equities after this date.

17H.  Subsequently Mr. Suvicharn had additional telephone conversations and
faxes from both Dr. Sunday and Dr. Andrew Giwa, Chief Legal Adviser, Central
Bank of Nigeria in regards to additional fees.  As a result of these conversations
and faxes Mr. Suvicharn sent the following wire transfers:

| DATE | AMOUNT | PAYEE |
|------|--------|-------|
| 7/17/95 | $ 120,000 | First Fidelity - NYC<br>For credit to Devcom Merchant Bank<br>Attn: Andrew Giwa |

| | | |
|---|---|---|
| 7/24/95 | $ 30,000 | First Fidelity Bank - London<br>For credit to Devcom Merchant Bank<br>Attn: Andrew Giwa |

17I.  Mr. Survicharn advised that on August 22, 1995 he flew to London, England at the request of Dr. Sunday to meet with an alleged official of the Nigerian Embassy in London who was to provide the final clearance for the transfer of the $ 28.5 million.  Mr. Survicharn advised that he met with Mr. Salahake and that he paid him $ 35,000 in cash,  per Dr. Sunday's instructions.  Mr. Salahake then took Mr. Suvicharn to an old apartment building in London where they met two other Nigerians, unknown names.  Mr. Suvicharn was shown a large suitcase full of black paper the size of $ 100 bills, as well as a bottle of chemical.  He was told that the money had to be colored black to get it out of Nigeria.  The chemical was used to clean the money and make it normal again.  Mr. Salahake cleaned about twenty bills, revealing each was a $ 100 bill.  He gave Mr. Suvicharn three of the $ 100 bills.  Mr. Salahake then told one of the other Nigerians to take the chemical and the black money into the bathroom and clean it for Mr. Suvicharn.  This was done, a few moments later Mr. Suvicharn heard a small explosion and the Nigerian in the bathroom ran out claiming that the chemical had exploded.  Mr. Salahake told Mr. Suvicharn that they had no more chemical in London that they would have to send to Nigeria for more and that he might as well return to Thailand, which Mr. Survicharn did.

17J.  After returning to Bangkok,  Mr. Suvicharn was re-contacted by Dr. Sunday and Dr. Giwa.  Based on conversations and faxes with both Dr.'s Sunday and Giwa regarding problems, Mr. Suvicharn wire transferred the following amounts:

| **DATE** | **AMOUNT** | **PAYEE** |
|---|---|---|
| 9/1/95 | $ 100,000 | First Fidelity Bank - London<br>For credit to Devcom Merchant Bank<br>Attn: Andrew Giwa |

| | | |
|---|---|---|
| 9/7/95 | $ 140,000 | First Fidelity Bank - London<br>For credit to Devcom Merchant Bank<br>Attn: Andrew Giwa |
| 9/28/95 | $ 89,100 | First Fidelity Bank - London<br>For credit to Devcom Merchant Bank<br>Attn: Andrew Giwa |
| 10/24/95 | $ 235,000 | First Fidelity Bank - London<br>For credit to Devcom Merchant Bank<br>Attn: Andrew Giwa |

17K.  On, or about November 7, 1995 Dr. Sunday advised Mr. Suvicharn that all
problems had been cleared up with his claim and that the Nigerian High Court had
ruled in his behalf and that the Central Bank of Nigeria was ready to transfer the
$ 28.5 million, as soon as an Adjustment fee of $ 235,000 was paid.  On
November 7, 1995 Mr. Suvicharn wire transferred $ 235,000 to First Fidelity
Bank, London, for credit to Devcom Merchant Bank, Attn: Andrew Giwa.

17L.  On or about December 15, 1995 Dr. Sunday contacted Mr. Suvicharn and
advised him that due to the recent upheaval in Nigeria that the fund transfer had
been stopped, however he knew a Nigerian General that could help them for
$ 200,000.  Mr. Suvicharn advised that he wire transferred the money to the same
account, however when he received notification from USSS regarding the fraud
scam, he froze the wire.  The $200,000 has since been returned to him, with no
loss.

18.  On January 22, 1996 I had Mr. Suvicharn place a taped consensual telephone call to
Erwin Berman at Brent Equities, telephone number 454-3098.  Berman told Mr.
Suvicharn that he had received his fax and it matched the documents in his office.  Mr.
Suvicharn asked Berman again about the $ 285,000 wire transfer.  Berman told Mr.
Suvicharn that he did not have the money, that anything he had received he had transferred
on to the Nigerians.  Mr. Suvicharn again told him that he needed advise about what to do
with the $ 200,000.  Berman advised that he had checked with the Central Bank of Nigeria
and that Mr. Suvicharn's money was sitting in Chase Manhattan Bank in an account with

$ 217 million that also was waiting to be disbursed. Berman again told Mr. Suvicharn to send him the $ 200,000 and that he would talk to Andrew Giwa at the Central Bank to take care of any problems and would then have the money transferred to him.

19. On 2/8/96 agents/officers of the South Florida Organized Fraud Task Force served a Federal Search Warrant on Brent Equities Trust Bank, 410 E. Hallandale Beach Blvd, Suite 200, Hallandale, Fl., while Berman was at work. Brent Equities turned out to be 10' x 15' office, within a larger office which is an insurance business. On and around Berman's desk were numerous faxes to and from "investors" (victims).

20. Berman was removed from the office and interviewed. Berman advised that he would be interested in cooperating with us in our investigation. He admitted that he had collected over $ 2.5 million in "contracts" and that he split the money 50/50 with his Nigerian partners. He further advised that he had been working with these Nigerians since late 1994. .

21. It should be noted that during the search executed on Brent Equities, by Agents/Officers of the South Florida West African Task Force, that we seized 28 boxes of records, and a computer. Preliminary examination of only one box of evidence, containing 1994 and 1995 records indicates that there are hundreds of victims involved in this scam, a partial count identified 494 names of individuals or companies. Out of these hundreds of victims, records seem to indicate that only 2-3% actually sent money to Berman (this figure was later confirmed by Berman). However, this figure is not indicative of the entire fraud, because there are numerous transactions that Berman was not privy to (i.e. Mr. Suvicharn sent Berman $285,000, however, total sent direct to Nigerians, without Berman's knowledge was over $1.3 million). Among the records seized was all the information on the letters and faxes sent to the victims that we had developed, from Berman's bank records.

22. Preliminary examination, of the seized records, has located numerous faxed sheets of instructions from Berman's Nigerian partners (at least 3-4 main partners). One such fax

tells Berman that there are three major groups of Advance Fee Fraud scammers operating in Nigeria. These three groups control all the Advance Fee fraud in the country and try to freeze out any independent operators. The agreed upon split is 50% to the overseas bank (such as Berman) and their contacts or agents and the other 50 % to the three major groups. Different groups evidently handle different parts of the transactions or business deals. Victims are referred to as "clients" while the Nigerian con men are referred to as "agents". Based on the faxed instructions I read, once the money arrives in a Nigerian bank account, it is divided up by the different groups or "agents" depending on their degree of involvement in the scam producing the money.

23. On 2/12/96, AUSA Jeff Kay, Inv. Johnson and I met with Berman and his attorney at the U.S. Attorney's Office (USAO) in Ft. Lauderdale. During this meeting and subsequent meetings Berman provided us with information regarding his involvement with his Nigerian partners, "Ben" (LNU) and "Sanni" (LNU) and others.

24. Berman advised that he first came in contact with the Nigerians when he himself received a "scam letter". After answering the letter and being told he had won $28 million dollars, which he never received, he realized that he was being scamed when the Nigerians asked him for advance payment up front. Subsequently he had numerous contacts with the Nigerians, who were trying to scam him. Berman advised he also tried to scam them in return. Eventually he was introduced by one of the Nigerians to "Ben". He and Ben developed a relationship that lead to a business partnership. (In support of this statement see the two page fax, marked ATTACHMENT 1, from Ben to Erwin Berman, dated 8/24/94, which lays out the beginnings of the scam. This fax was found during the search of Brent Equities.) Berman advised that Ben later introduced him to "Sanni", Berman's other main partner. All this occurred in mid to late 1994.

25. Berman advised that from late 1994 to the present he has received approximately $2.6 in coming wire transfers from different "contacts" (victims), that his Nigerian partners had sent to him. Berman advised that the agreed upon split was 50/50. Berman was the American Bank, which gave the victims confidence that the deals were legitimate. Berman

would assure the victims that the "contract" (Nigerian letter ) was legitimate and that he was the official contact of the Central Bank of Nigeria. Berman advised that his Nigerian partner's; Ben, Sanni, Bayo (LNU) and Jay Smith would initiate the contacts with the victims. After his Nigerian partners developed the scam story with the victims, Berman stated that they would pass the victim on to him to obtain the payment. Berman advised that after receiving the money he would wire transfer his Nigerian partners share to a bank, usually in London. Berman advised that on occasion some of the money flowed through the Nigerians first, and they would wire transfer his share to him. Normally, however, he believed that the Nigerians cheated him and he received less than half the money that was due him. Berman advised that in all his dealings with the Nigerians and the victims, that he knew of no victim that received the promised payment.

26. During a review of the evidence found during the search of Brent Equities a ledger book was found, which listed all the victims of this scam, the amount of money obtained from the victim (through Brent Equities), date of the wire transfer, the bank transferred to, as well as the Nigerian partner, the amount of money wire transferred to this partner, the date of transfer and the bank transferred from (a copy of this ledger is attached as ATTACHMENT 2). It should be noted that Berman has examined the ledger and has confirmed that it is his ledger and that the information contained in it is true and correct.
27. Below is a synopsis of the information regarding the victims, the amount of money wire transferred to Berman by the victims, as well as the name of the Nigerian he was transacting the deal for:

## BRENT EQUITIES' VICTIMS

| VICTIM'S NAME/COMPANY | DATE(S) | AMOUNT | NIGERIAN |
|---|---|---|---|
| JJS Bangkok Development & Manpower Co. Bangkok, Thailand. Suvicharn Yangyuewong | 06/30/95 | $284,984 | Ben |

12

| | | | |
|---|---|---|---|
| Vera Srivaleesumphant | 04/04/95 | $ 53,990 | Ben |
| Bangkok, Thailand | 04/04/95 | $ 96,000 | Ben |
| | 04/24/95 | $ 99,985 | Ben |
| | 04/28/95 | $ 57,490 | Ben |
| | 05/31/95 | $110,000 | Ben |
| | 06/28/95 | $ 25,000 | Ben |
| | TOTAL | $442,465 | |
| Leong Jin Corporation Singapore Ho Kiau Seng | 12/16/94 | $254,988 | Sanni |
| Joe Broodryk Property Developers Durbanville, S. Africa Wernard Broodryk | 11/18/94 | $ 10,000 | Ben |
| Skan Company Moscow, Russia Victor Skripnikov | 03/21/95 | $113,700 | Sanni |
| Helmut Bracke Naples, Fl | 11/07/94 | $ 38,000 | Ben |
| Pieter Bracke Parkstetten, Germany | 12/09/94 | $ 17,980 | Ben |
| Spena Investments Isle of Man R.G. Hayes | 05/25/95 | $ 99,975 | Ben |
| Rafeal Abuisak Tel-Aviv, Isreal | 11/24/95 | $274,985 | Sanni |
| Francoinvest Estab. Liechtenstein H. Liu | 07/18/95 | $646,000 | Sanni |
| Nacken, Kunzig & Co. Raunheim, Germany Josef Nacken | 03/30/95 | $113,700 | Sanni |
| Davika Co. Marseille, France Daniel Arbona D. Spamazzola | 06/27/95 | $94,360 | Ben/ Steve |

| | | | |
|---|---|---|---|
| Opointer Trading Group | 04/12/95 | $95,000 | Ben |
| Fukui City, Japan | 04/13/95 | $10,000 | Ben |
| Tom Shimada | total | $105,000 | |
| Suzanne Al Sayed Tessier | 01/26/96 | $80,000 | Pius/ |
| Switzerland | | | Suleiman |
| | TOTAL: | $2,576.137.00 | |

28. I reviewed all the subpoenaed NationsBank and Home Savings Bank account records, and confirmed that Berman, through Brent Equities, had received approximately $2.6 million in wire transfers from the victims of this Nigerian Advance Fee Fraud. Bank records examined by Investigator Johnson and I exactly match, by victim, date and amount the entries that were found in Berman's ledger. All of the victims, except one reside out side the United States. In addition Berman's partners have received at least an additional $3.5 million, which can be documented by faxes or other correspondence.

29. Berman agreed to cooperate with the USSS and agreed to keep his "bank" open, so as to gather further evidence against Berman's Nigerian partners. Berman was set up in an office that we controlled, where we could monitor his activities and consensually tape record his conversations with his Nigerian partners, so as to confirm their involvement with this scam.

30. Berman continued his ongoing operations with his two main Nigerian partner's; Ben (LNU) and Sanni (LNU), as well as Sanni's sub-lieutenants Bayo and Jay Smith, in an attempt to tie all of them, by conversations, to the previously committed frauds and to corroborate statements made by Berman.. As a part of this operation all incoming and outgoing phones calls to Brent Equities were consensually taped recorded and monitored by either Investigator Jim Johnson or myself.

31. From 2/12/96 to 3/21/96 we have taped dozens of telephone calls, Berman had, with Ben, Sanni, Bayo and Jay Smith as well as others. These calls have confirmed previous frauds that the two groups have perpetrated and have developed new frauds that the two

groups, Ben's and Sanni's, are attempting to perpetrate. Sanni, Bayo and Jay Smith are presently operating out of London, England. Ben is operating out of Lagos, Nigeria.

32. In regards to Ben, during the last twenty-six days of taping telephone conversations, Berman has talked to Ben at least once a day, most days they had several conversations. All these conversations were initiated by Ben, or were in response to either voice mail messages left or faxes requesting that Berman call him. On virtually every day Ben has asked about or requested Berman to contact victim Suvicharn (Yangyuewong) regarding obtaining additionally funds from him. Suvicharn paid $ 285,000 (as listed above) to Berman and Ben, who purported to be Dr. Andrew Giwa, the Chief Legal Advisor of the Central Bank of Nigeria. In addition Suvicharn paid another $1.3 million to Andrew Giwa, that did not funnel through Berman or Brent Equities.

33. On 3/6/96 Ben, in a consensually taped conversation admits to Berman that he is Andrew Giwa and in another consensually taped conversation with Berman on 3/8/96, Ben admits "he controls Andrew Giwa's (bank) accounts".

34. In regards to victim Vera Srivaleesumphant, in a consensually taped conversation with Berman, on 2/27/96, Ben talks about scamming Vera and the fact that Vera had called him several times regarding his contract. Ben told Berman that Vera, "had reached his limit" and that he had no more money. On 2/7/96 I personally talked to Vera Srivaleesumphant, who lives in Bangkok, Thailand. Vera confirmed to me that he had sent $ 442,465.00 to Brent Equities regarding a contract with the Central Bank of Nigeria. In addition, Vera admitted to sending an additional (approximately) $1 million straight to the Nigerians. He further advised that he never received any money from the Nigerians on his "contract".

35. Berman advised me that Ben instructed him, and faxes found in the search of Brent Equities verify, that Ben instructed Berman to wire transfer his share, of the money received, from Vera to the following accounts.

| BANK NAME: | DATE: | AMOUNT: | CREDIT TO: |
|---|---|---|---|
| First Fidelity Bk<br>Salem, N.J. | 4/6/95 | $32,000 | Merchant Bank of Africa<br>FFC to Roland Igwe |
| First Fidelity Bk<br>Salem, N.J. | 4/28/95 | $14,000 | Merchant Bank of Africa<br>FFC to Roland Igwe |
| First Fidelity Bk<br>Salem, N.J. | 5/3/95 | $8,000 | Merchant Bank of Africa<br>FFC to Roland Igwe |
| Byblos Bank<br>London, England | 5/4/95 | $75,000 | Comet Merchant Bk, Ltd.<br>FFC to B. Onuoha |
| First Fidelity Bk.<br>Newark, N.J. | 5/4/95 | $32,000 | Merchant Bank of Africa<br>FFC to Roland Igwe |
| First Fidelity Bk<br>London, England | 6/5/95 | $49,900 | Devcom Merchant Bk.<br>FFC to Steve Ahans |
| Australia & New Zealand Bk<br>London, England | 6/5/96 | $20,000 | Crown Merchant Bank<br>FFC to Roland Igwe |
| First Fidelity Bk<br>Newark, N.J. | 7/10/95 | $147,000 | Merchant Bank of Africa<br>FFC to Roland Igwe |

36. Based on investigation, review of seized records (from the search warrant of Berman's office), taped conversations with suspects, I believe that Ben and Sanni run two of the largest Advance Fee Fraud rings operating out of Nigeria/London. To date over 789 victims have been developed, the fraud loss to these victims (including that attributed to Berman - $2.6 million) we believe will exceed $10 million. This amount is expected to climb drastically when we contact the other victims directly (ie. Victim Suvicharn had sent $285,000 to Berman, when interviewed he advised that he had sent a total of $1.6 million to the Nigerians and stopped another $200,000 payment he had just made, when we contacted him).

37. Based on the above information, I have probable cause to believe that, between April 1, 1994 and the present, that Erwin Berman and "Ben" (LNU), aka. Andrew Giwa, Jude T. Oguegbe and Benjamin Igwe have conspired together and have devised a scheme to defraud or for obtaining money or property by means of false or fraudulent representations

16

or promises. And as a result of this scheme have transmitted or caused to be transmitted by mean of wire, in interstate or foreign commerce; writings, signs or signals for the purpose of executing such scheme; and in interstate or foreign commerce has caused to be transmitted or transfered, money of the value of $ 5,000 or more, knowing the same to have been taken by fraud. All the above, in violation of Title 18 USC, Section 1343, 2314 and 371.

38. In addition that, between April 1, 1996 and the present that; "Ben" (LNU), aka Andrew Giwa, Jude T. Oguegbe and Benjamin Igwe; has transported, transmitted or transferred; or has caused to be transported, transmitted or transferred, funds or a sum of money from a place outside the United States to a place inside the United States; and from a place inside the United States to a place outside the United States, knowing that said funds or monetary instruments involved in the transportation, transmission or transfer represent the proceeds of some sort of unlawful activity; in whole or part to conceal or disguise the nature, the location, the source, the ownership or the control of the proceeds of specified unlawful activity. Said specified unlawful activity being wire fraud and Interstate or Foreign transportation of stolen property. All the above in violation of Title 18, USC, Section 1956 (2)(A)(B)(i)(Laundering of monetary Instruments).

FURTHER AFFIANT SAYETH NAUGHT

William A. Lowe, Special Agent
United States Secret Service

Sworn to and Subscribed before
me this ____ day of ____ 1996.

United States Magistrate Judge

17

All this years we have known each other even though we have not

become partne  )and make some money for o  )elves capitalising on the anti-clockwise system in my country.

Let me start by introducing myself formally. I am Ben. I am an Accountant by profession and worked in the Central Bank of Nigeria in the foreign operations department for 7 years. I was sacked from the Central Bank two years back as a result of a deal I was involved and in which I mastermined the transfer of $7Million USD Dollars to an account in London. At the end of the day, the Indian guy we used his account asked us to go to hell. He left Nigeria without trace uptill now.

This problem started my ordeal. I have actually made money in my life but I had to use my savings to fight my way out of going to prison. Even my knowing you is a conciedence because the chaps who were contacting you initially wanted me to advice them on International Banking with the sole aim of cheating you. But when I spoke to you something in me told me that you are ok hence I came out to tell that the whole thing from a scam.

However, if you accept this partnership, then our target from now till December will not be less than $5Million USD Dollars. Like I have mentioned over and over again I have good contacts in Europe I can with your assistance pull any kind of deal without anyone of us having problem with the security agents.

All we now do is to put ourselves together in this form:

(1)     I have created "Breent Securities and Investment Bank with its foreign operations office in your Corporate office.

(2)     This outfit shall be acting and referred to as the Correspondence Bank of the Central Bank of Nigeria as well as foreign payment authorisation clearing house.

(3)     Subsequently, you shall be confirming by fax or phone call the existence of some certain payment for some beneficiaries. (This enquiries shall be coming in from time to time.

(4)     After your confirmation to this people on an inquiry I shall from Nigeria through my guys CBN ask them to pay some amount of money before their payment is released.

(5)     I have set up as well a strong group within my former colleagues at the Central Bank that to the effect that the status of Breent Securities as the corrospondence Bank of CBN shall also be confirmed.

I have been discussing since morning with the German Guys with regards to the Capital confirmation deposit certificate and based on our present setup I now want to use Breent Securities and Investment Bank to confirm the validity of the Certificate.

../2

Box 11

Box 11

Between you and me Brent Securities does not exist and since
the Bank in Germany will find out that the Bank is not listed
therefore they will require a Recommendation from another
prime Bank like Federal Reserve or Sun Bank etc How can this
be arranged?

Honestly I can arrange anything here from any Nigeria Bank
but due to the Bad reputation of Nigeria acorss the world,
Nigeria Bank are nolonger taken serious.

Finally I want you to bear in mind that I put your freedom
security and well-being before anyother thing and will not
do anything that will put your person in trouble.  Whatever
we make we split 50/50.

My main reasons for taking this decision is that I want
to make fast money and Investment it into Crude Oil
spot lifting in Nigeria which is very easy for me to do.

Having explained to you as above more than everbefore,
I want you to count on me from today and I will also count
on you.

Awaiting your response.

Call me.

Regards,

Ben.

PS

ATTACHED IS
THE CREATED
LETTER HEAD

" BRENT SECURITIES
AND INVESTMENT
BANK "

WILSON JONES COMPANY    G7204 GREEN    7204 BUFF    MADE IN U.S.A.

| | 1994 | INCOME | | PAID OUT | | |
|---|---|---|---|---|---|---|
| **NOV.** | | | | | | |
| 7 | BRACKE | (HOME) | 10,000 — | 11/20 | 10,015 | BEN (N) |
| 19 | BRODRYK | (HOME) | 10,000 — | 11/18 | 15,000 | BEN (N) |
| 7 | BRACKE | (NATIONSBANK) | 28,000 — | 11/25 | 7,000 | BEN (N) |
| **DEC** | | | | | | |
| 18 | BRACKE | (HOME) | 17,980 — | 11/14 | 10,000 | BEN (N) |
| 13 | PENG | (HOME) | 254,988 — | 11/20 | 100,015 | SANNI (H) |
| | | | | 11/4 | 40,000 | BEN (N) |
| | | + | 320,968 | — | 182,030 | |
| | GROSS NET | | 138,938 | | | |

Attachment
#2

WILSON JONES COMPANY     G7204 GREEN     7204 BUFF     MADE IN U.S.A.

*RENT EQUITIES, Inc.*

Prepared By

Approved By

| 1996 | INCOME | | PAID OUT | |
|---|---|---|---|---|
| JANUARY | | | | |
| 3 BEN - VIRA/MAVIS Ⓝ | 14,430.79 | | | |
| 26 PLJS/SULEMAN - SUZANNE Ⓝ | 80,000— | | | |
| FEB. | | | | |
| 1 | | | 7, STOCK - S Continental | |

WILSON JONES COMPANY    G7204 GREEN    7204 BUFF                                                MADE IN U.S.A.

| | 1995. | INCOME | | | PAID OUT | | |
|---|---|---|---|---|---|---|---|
| | March | | | | | | |
| 21 | Skrypnika - Skan | (N) | 113,700 | 3/23 | 50,000 | (N) | SANNI |
| 31 | Nacken | (N) | 113,700 | 4/3 | 60,000 | (N) | SANNI |
| | | | 227,400 | | 110,000 | | |
| | April | | | | | | |
| 4 | VIRA | (N) | 96,000 - | 4/6 | 32,000 | (N) | BEN |
| 4 | VIRA | (N) | 53,990- | 4/6 | 75,000 | (N) | BEN |
| 17 | OPTOINTER/Shimada | (N) | 95,000 - | 4/19 | 40,000 | (N) | BEN |
| 17 | OPTOINTER/Shimada | (N) | 10,000 - | 4/20 | 15,000 | (N) | BEN. |
| 24 | VIRA | (N) | 99,985- | 4/28 | 14,000 | (N) | BEN. |
| 28 | VIRA | (N) | 57,490- | | 176,000 | | |
| | MAY | | | 5/1 | 44,000 - | | BEN - |
| 25 | SPENA - HAYES | (N) | 99,975- | 5/3 | 25,000 - | | BEN - |
| 31 | VIRA | (N) | 110,000 - | 5/3 | 8,000 - | | BEN - |
| | | | | 5/6 | 49,900 - | | BEN - |
| | | | | 5/6 | 1500 - | | MAVIS-BEN |
| | JUNE | | | | | | |
| 27 | DAVIKA | (N) | 94,360 - | 6/9 | 49,000 - | | BEN-STEVE |
| 28 | VIRA (BEN) | (N) | 25,000 - | 6/29 | 58,000 - | | SANNI |
| | | | | | 57,500 | | |
| | July | | | | | | |
| 3 | J.J.S. | (H) | 284,984- | 7/10 | 147,000 - | | BEN |
| 18 | LIU/Fraco Invest | (N) | 646,000 — | | 6,000 - | | MAVIS |
| | | | 930,984 | 7/20 | 323,000 - | | SANNI |
| | | | | | 476,000 | | |
| | August | | | 8/24 | 1000 - | | MAVIS |
| | SEPT. — 0 — | | | | | | |
| | OCT. — 0 — | | | | | | |
| | NOV. | | | | | | |
| 24 | R. Adriak (SANN) | (N) | 274,985- | 11/24 | 140,000 - | | SANNI |
| | DEC. | | | | | | |
| 6 | BEN | | 11,944.-B | 12/21 | 900 - | | MAVIS |
| | | | 2,188,113 | | 1,131,900 | | |

Gross NET = 1,056,213

| | Initials | Date |
|---|---|---|
| Prepared By | | |
| Approved By | | |

MAVIS ARI. L
7919 CANDLEWOOD   Houston Tx 77071
SS# 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

713 - 794-9288 ⓞ
726 - 0376 ⟵ Ⓗ
270 - 6720

Compass Bank -
Houston Tx  ABA #113010547
acct # 0799vv315

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

**IN THE MATTER OF A COMPLAINT AND**
**ARREST WARRANT**

NO. _____

### SEALING ORDER

IT IS HEREBY ORDERED that the Complaint and Arrest Warrant and
the government's Motion To Seal in the above-captioned matter shall
be sealed and shall remain sealed in the custody of the Clerk of
the Court until otherwise ordered by the Court.

DONE AND ORDERED at Fort Lauderdale, Florida this _____
day of _____ 1996.

_____
ANN VITUNAC
UNITED STATES MAGISTRATE JUDGE

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA


IN THE MATTER OF A COMPLAINT AND    NO. 96-3661-Kay
ARREST WARRANT

### MOTION TO SEAL

The United States of America, by and through its undersigned
Assistant United States Attorney, requests that the Court order
that the Complaint and Arrest Warrant and this Motion To Seal in
the above-captioned matter be sealed and remain sealed in the
custody of the Clerk of the Court until otherwise ordered by the
Court in order to protect the secrecy and integrity of the ongoing
investigation in this matter.

Executed this _22nd_ day of _March_ 1996.

Respectfully submitted,

KENDALL COFFEY
UNITED STATES ATTORNEY

BY: _____
JEFFREY H. KAY
ASSISTANT UNITED STATES ATTORNEY
U.S. Courthouse
299 East Broward Boulevard
Ft. Lauderdale, Florida 33301
(305) 356-7392

